[318]            THE STATE v. ANDERSON.

1. One who has not been a resident of a county, and possessed of a freehold estate in it, during the three years immediately preceding, is ineligible in that county to the office of sheriff. The Supreme Court has a right to inquire into this fact, and to vacate the commission. *Quere*, whether by *certiorari?*

2. The commission affords no proof that the person elected was qualified according to law. It is incumbent on the sheriff, when properly called on by the court, to prove that he was eligible.

3. Affidavits stating circumstances leading to the supposition that the sheriff elected was not properly qualified, afford sufficient grounds for the court to proceed upon.

4. The election of an unqualified person as sheriff, is not *ipso facto* void; it is only voidable.

5. On a *certiorari*, the court have discretionary powers, and if they think the public service will suffer by the removal of an unqualified officer, they will not vacate his commission.

6. The ministerial acts of a sheriff *de facto*, though ineligible to the office, are valid.

*Certiorari* to the clerk of Hunterdon county.

In this case a *certiorari* had been directed to the clerk of the county of Hunterdon, commanding him to certify the return of the election of the sheriff of that county, held in October, 1794. The clerk, in obedience to the writ, returned the account of the votes taken, from which it appeared that Jacob Anderson, the defendant, had the greatest number of votes, and that S. Stockton, the then clerk, had certified that Anderson was duly elected sheriff of the county.

These proceedings were had to try the validity of this election, and to ascertain whether Anderson was entitled to hold the office. The ground upon which they were instituted was, the alleged fact that Anderson was not a freeholder at the time of the election, and had not been so during the space of three years immediately preceding.

*R. Stockton* and *Forman*, for the state, produced, and after some opposition, were permitted by the court to read several

affidavits, by which it appeared that Anderson had said, when summoned as a juryman, that he was not a freeholder; and circumstances were stated, leading to the belief that he had not been a freeholder since the year 1791.

They then contended that, under the act of 1788, it was necessary that a person should be seized of a freehold estate during the whole of the three years immediately preceding his election to the office of sheriff.

*Leake*, for the sheriff, produced—

1st. The certificate of the clerk of the county, that Anderson was duly elected sheriff.

2d. A certificate that he was duly qualified to execute the office.

3d. A certified copy of the bond to execute the office, and the approbation of the judges.

4th. His commission as sheriff.

[319] He then contended—

1st. That the Supreme Court had no jurisdiction of the matter.

2d. That the sheriff, having been elected by the people, having given the security required by law, and having received his commission, was entitled to hold the office, notwithstanding the present *certiorari*.

By the thirteenth article of the constitution of New Jersey, "the inhabitants of each county qualified to vote shall annually elect one sheriff." Anderson was therefore duly elected by the people, and this court cannot at this time set aside their decision. The objection, if existing, should then have been made. The people should have been informed that they were giving their votes for a person not eligible to the office. His opponents should then have objected; they ought not to be permitted, after the election was decided, when the term of service is now half over, to question its legality.

Under the act of 1788, the sheriff elect is to enter into bonds and give security for the faithful performance of his duty. Here, therefore, was another opportunity afforded to

the prosecutors to urge their objections; but they suffered this to be done quietly and without opposition.

Still, however, the commission had not issued, and the prosecutors should then have come forward and prevented the governor from granting a commission to a person not qualified by law to hold the office. This opportunity also was omitted.

After this gross negligence the court ought not to listen to these attempts. It is not merely Anderson who is now interested in the event of this prosecution, though in that case it would be hard, after such a lapse of time, after having passed through half his term of office, and after the prosecutors have omitted to urge their objections when more appropriate occasions offered, to dispossess him; but others have a right to oppose this investigation. In the exercise of this office for six months he has served many writs; he has paid and received much money; he has imprisoned many persons; and has, in all probability, conveyed many estates. The objection that has been brought forward goes to prove his election [320] void *ab initio;* that he never did legally hold the office, and, consequently, to vitiate and invalidate every act performed by him as sheriff.

But the facts of his being elected, of his having executed the bond for the faithful performance of the duties of his office, having taken the requisite oath, and receiving his commission, amount to something more than mere *prima facie* evidence that he was legally qualified. The court have a right, from these circumstances, to presume in his favor. The objection, if it existed at all, existed before his election, and these circumstances are entitled to some weight in considering its force.

The evidence adduced is not sufficient to counterbalance this presumption in our favor; the facts that are stated in the affidavits are by no means conclusive, and in such a case ought not to be assisted, or viewed with a favorable eye. A bare possibility that he is qualified should be sufficient to satisfy the court in opposition to this testimony.

The case before the court may be resembled to a case on which a jury have passed a verdict, where it has repeatedly been held that if by any means whatever the plaintiff can be supposed to have a title as laid in the declaration, the court will, after verdict, hold it right. *Morris* v. *Barry*, 1 *Wils.* 1; 2 *Str.* 1180. They will intend anything in support of a verdict.

An analogy may also be perceived between this case and one in which a juryman is challenged for want of a freehold. Such a person is disqualified to act as a juryman, but the objection comes too late after verdict. *Compl. Jurym.* 270. The cause of challenge must be made out at the trial; otherwise it is good for nothing.

This objection, also, is like a matter pleadable in abatement, which, if pleaded at the proper time, and in the proper manner, would be fatal; but if then omitted, cannot afterwards be taken advantage of.

The section of the law cited is also ambiguous, and may be interpreted by requiring the inhabitancy of the sheriff to have continued three years. It does not necessarily imply that the freehold estate should have had that duration; and [321] certainly a strict interpretation of the law does not in either case require that it should have been the three years immediately preceding the election.

The clause in the act, however, operates upon the electors, and not on the elected. If they vote for one not qualified, they violate the law, but if he is regularly chosen, he is guilty of no violation of duty in holding the office and performing its functions. Nor could the legislature have intended that all who violated the law were punishable; that every person who gave a vote for an unqualified candidate was a violator of the law and punishable by indictment; they merely intended that it should be directory, and to the electors.

Again, the prosecutors in this case contend that Anderson was not a freeholder, within the true meaning of the act of assembly, and this fact is negatived by the defendant. Here, then, is the question of fact upon which the case turns,

2 A

which is triable properly by a jury, and not by the court. This is an unprecedented proceeding, and contrary to *Magna Charta, c.* 29, and our own constitution. *Const. of N. J., Art.* 22*d.*

But, for a moment omitting the consideration of these matters which stand in the way of the prosecution, and admitting, for the sake of argument, that he has been improperly elected, the next question is, how is he to be punished for this offence? The act prescribes no punishment, nor does it say that he shall be turned out of office. No construction which can be given to the act, will vest this power in the court.

If the sheriff, after his election, refuses to enter into the bond, and give the security required by law, or to take the oath of office, he cannot act; because these are necessary preliminaries. But if, not being a freeholder, he is elected by the suffrages of the people, and receives his commission, there is no power vested in any tribunal to question the validity of this election, or to remove him from the office. If the provisions of the law have been infringed, let the proper punishment follow. For every violation of the express words of a statute, where no specific penalty is annexed, the offender is liable to an indictment. 6 *Bac. Abr.* 393–4; 2 *Burns' Ecc. Law* 36, 37; 1 *Burns' Just., Intr. XXI.,* § 8. Or if any one [322] is injured by his neglect to comply with the provisions of the law, Anderson may be sued by an action on the case.

This, also, is a novel mode of proceeding. Upon what grounds is the *certiorari* directed to the clerk of the county, a mere ministerial officer? Why is it not directed to the electors who voted for him, to the judges of the election, to the governor and secretary of state, who signed his commission? With the same propriety might it have been directed to them as to him.

But have this court ever, upon a *certiorari*, vacated the commission of any officer? There is no such precedent to be found. The uniform course has been by information, when

it was designed to remove a person not legally elected. It is said, (6 *Bac. Abr.* 146,) that if a sheriff refuses to take the oaths enjoined on him, or officiates in the office before he hath thus qualified himself, an information shall be granted against him. In the same book, 140, 144, there are several precedents of informations against sheriffs, for refusing to execute the duties of their office. 2 *Mod.* 299 ; *Salk.* 167 ; 2 *Burns' Ecc. L.* 185 ; 6 *Br. Parl. Ca.* 181.

In 4 *Com. Dig.* 415, *title " Information," letter C,* a distinction is drawn between the cases where the statute makes the act an absolute nullity, and where it renders it merely voidable ; in the former case a *certiorari* will be sufficient ; in the latter, an information is the proper remedy. 2 *Mod.* 302, *cited.*

Since the act lately passed (see act of 17th of March, 1795, *Paterson's Laws* 177,) by the legislature, it would be in vain to pretend that justice could not be obtained, and the improper officer removed with sufficient ease and dispatch ; and though that act is of recent date, it merely facilitates a course which ought to have been pursued had it never been passed.

*Stewart,* on the same side. The defendant in this case is entitled to have his rights decided by a jury. The office is an estate, valuable to him, and it is contrary to the whole tenor of our law to dispossess him of it in a summary way without the intervention of a jury.

[323] In a case like the present, at all events, a *certiorari* is an unusual and improper proceeding. A *quo warranto* would lie at common law. 3 *Bl. Com.* 262. Since the passing of the act of the legislature on the subject of informations in the nature of *quo warrantos,* there can exist no doubt but that it is the proper remedy.

It is one of the best established principles in the common law, that when a party neglects to make his objections within a reasonable time, he is considered as waiving them, and shall not afterwards be permitted to take advantage of the same defects. In this case, we contend that the wisdom of this

rule is clearly discernible, and should be strictly applied. The objection which is urged existed before the election, and might have been brought forward then with more propriety than now; there is no equity with them; they stand upon the extreme rigor of the law, and with the same measure they mete, ought it to be meted to them again.

It is not a little singular that in this writ of *certiorari* the name of Jacob Anderson, the defendant, is not to be found. He is made a party to the prosecution, and his name is introduced into the proceedings by the return of the clerk. It would, to say the least, be somewhat singular upon a proceeding commenced and carried on in this manner, to oust him of his office.

Again, a *certiorari* is designed to bring certain proceedings before the court, in order to determine their legality or illegality. If they are absolutely void, a *certiorari* is the proper remedy; if only voidable, they cannot be set aside by this writ. But when an act of parliament declares anything void, it is only voidable. *Ld. Hard.* 311; 1 *Bl. Com.* 163. There must be a judgment given by some legitimate tribunal upon the case.

In this respect it differs with a writ of *quo warranto*, which is in the nature of a writ of right. 3 *Bl. Com.* 262. An information is similar to a declaration. 4 *Com. Dig.* 409. And it lies where a man omits anything which is commanded, or does what is prohibited by statute, (*Ib.* 413,) as, if an officer neglects or abuses his authority, (*Ib.* 414,) or for usurping an office. *Ib.* 415.

[324] *Forman* and *Stockton*, in reply, cited 12 *Viner's Abr.* 201, on the subject of negative testimony, and 4 *Com. Dig.* 415, where a statute prohibits any to be a justice of the peace who has not £40 per annum, &c. An information is not necessary.

It is to be considered—

1st. Whether Anderson was a person capable of holding this office.

2d. Whether his eligibility has been determined by any competent tribunal.

3d. Whether the election of an ineligible person is not absolutely void.

4th. Whether, if void, this is not the proper mode of removing him from his situation.

1st. The principal question to be considered is, whether he should be a resident freeholder for the three years next previous to his election. The words are, " Be it enacted, That no person shall hereafter be eligible to the office of sheriff in any county of this state unless he *shall* be, and hath been, an inhabitant thereof, and possessing a freehold estate in his own right in fee simple, in the same county, for three years previous to his election."

It would seem impossible to strain these words so as to involve in any ambiguity or doubt the obvious meaning of the legislature. The participle " possessing " is joined to the word " inhabitant," and means having during the time of such habitancy. It is impossible by argument to prove so palpable a truth.

This being the construction, it is said that it bound only the electors, and is altogether a directory law. Upon what grounds this idea is built it is difficult to imagine. The terms used are general ; it would render it altogether inefficacious to confine its meaning in this manner, and defeat every end which the legislature can be presumed to have had in view.

2d. It is said that four different tribunals have already determined this question in favor of the defendant. But it never came before them for their decision, and they had neither power nor right to adjudicate upon it.

[325] The people who elected Anderson certainly did not constitute a tribunal to decide whether he was legally qualified to hold the office. They came forward merely to give their suffrages, and it would have been a most singular spectacle to have seen them assuming the powers of a court, hear-

ing the question argued by counsel, and deciding upon it as if they were a regularly constituted tribunal of justice.

Nor had the judges of election any greater powers in the business. Their duties and authority are plainly pointed out and prescribed by statute, and it is in vain that we search the law for the clause which vests in them these important functions. The act declares what their duties are, but does not constitute them tribunals of justice.

It is the same with the vice president or governor. He is merely an executive officer; he must grant the commission upon the certificate, and cannot inquire into the legality of the election or the qualifications of the elected.

If these different persons then had not, as they clearly had not, authority to adjudicate upon this question, or to hear the objections to the validity of the election, all the objections to these proceedings, on account of their being brought forward at a late period, must fall to the ground.

3d. The election is altogether void. If the legislature has, in express terms, declared what shall make a man eligible, and the conditions prescribed are not complied with, the election is absolutely void. It has been repeatedly holden in England that votes given for an unqualified person were thrown away. 2 *Burr.* 1021.

With regard to all the arguments drawn *ab inconvenienti,* it is a uniform rule that they are never to be weighed against a clear decision of the law; when the matter is doubtful, or the point raised is to be settled for the first time, then they are maturely to be considered. If, therefore, this election was absolutely void, the court ought not to be deterred from removing him by any apprehension of the consequences which may flow from their determination.

But in the present case these arguments are altogether groundless. All acts done in the performance of his duty by one who is officer *de facto,* or who is under a color [326] of right, are valid to every intent. *King* v. *Lisle, Andrews* 163.

4th. This, then, is the proper course of proceeding. This

The State v. Anderson.

court is vested with a superintending jurisdiction over all inferior tribunals, and ministers and officers of justice. It has the power to keep them within their appropriate spheres of duty, and to take care that they adhere to the laws by which they ought to be governed.

We are told that a *quo warranto* is the remedy we should have pursued; but this remedy lies only where an office is held by grant or prescription, and is not a proceeding which is proper for the present case. If in this case, then, a *quo warranto* is not a proper remedy, a *certiorari* is. The court will not refer to an act passed since these proceedings commenced, in order to ascertain whether we might have taken another course; we looked at the law as it stood at the time, and governed ourselves accordingly.

KINSEY, C. J.

(After detailing the facts of the case.) As my opinion in the present case is founded on a particular circumstance not noticed in the argument, I do not think it material to enter minutely and at full length into a consideration of all the points which have been contended for with so much ability and ingenuity. Still, as an opinion upon some of those which are the most material may in future prevent much trouble, it is thought advisable to express the judgment which the court have formed after deliberation and full argument.

We think the affidavits that have been read afford this court sufficient ground to say that Anderson was not a freeholder in the county during the three years preceding his election; and that his commission in no way proves the contrary, nor does it authorize the court to presume that he was.

It is incumbent upon the sheriff, when properly called on by the court, to prove that he was eligible to the office; and this for a reason mentioned by one of the counsel who argued for him, that it is impossible for the other party to prove a negative, and further, because the proof is wholly in his own power. The arguments by which it has been attempted to

[327] be inferred that he was legally qualified, from the fact of his being commissioned, are unsatisfactory, and inconclusive. The positive language of the act of assembly ought neither to be frittered down by too refined constructions, nor its import destroyed by presumptions and inferences.

Still, however, we think the election not *ipso facto* void. The case of *The King* v. *Lisle,* fully establishes this point. This case is reported at some length by *Andrews* and shortly by *Strange* 1090 ; from both of the reports it may be collected, that nothing more is necessary to constitute an officer *de facto* than the form of an election ; and in Strange it is added "though that upon legal objections may afterwards fall to the ground." In the present case there was at least that form. Anderson, therefore was sheriff *de facto ;* and we think that all his acts which were performed in discharging the duties of his office were good.

It has been contended that the words for three years previous to his election, extend to the word inhabitant, and not to the qualification annexed. To this I shall answer nearly in the words of Lord Coke in *Altham's case,* 8 *Rep.* 308. " It would be against reason that they should refer only to words which are more remote, and not to the words of qualification which are immediate and next to them; and that is so clear and perspicuous of itself, that it is not worthy of any argument or proof to confirm it "—and in truth being general, and at the end of a sentence it applies to both.

His Honor here recited the section of the law which has been before given, and went into a critical examination of it to confirm this construction.

Under these circumstances therefore the court might have felt it their duty to set this election aside, if on consideration they thought that this was proper to be done on a *certiorari ;* principally because we think that it is the duty of this court to prevent the plain language and clear intentions of the legislature from being defeated, either by an individual or a county. But as the legislature have by a recent law prescribed a speedy and efficacious remedy in cases of this nature, which, though not applying to the past will afford effec-

tual relief in future, as a decision by this court will leave [328] the county without a sheriff, and in this manner subject the public to great and unforeseen inconveniences. As upon a *certiorari* the court have by law a discretionary power, I do not mean by this a power to do what they please, not directed by law and precedents, but, to employ the language of a great judge, to be confined to those limits within which an honest man, competent to the discharge of the duties of his office, ought to be confined; and as I think that the continuance in office of Anderson cannot be attended with any considerable evils, I think the *certiorari* ought to be quashed in the present case.

This opinion is sanctioned by that of the court in the case of *The King* v. *King et al., Commissioners*, 2 *T. R.* 334. In that case Erksine had obtained a *certiorari* to remove all the assessments for the land tax in a particular district for the year 1787, and the court made the rule for quashing the *certiorari* absolute, on the single ground of public inconvenience. Other cases might be cited to the same purport; but the principles of that case fully apply to the one before the court.

*Certiorari* quashed.

CITED *in State* v. *Hanford*, 6 *Hal.* 71; *State* v. *Mor. Can. & Bkg. Co.*, 2 *Gr.* 427; *State* v. *Green*, 3 *Harr.* 183; *State* v. *Clerk of Passaic*, 1 *Dutch.* 355; *Camden* v. *Mulford*, 2 *Dutch.* 55.